## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. CIV-20-81-G** |
| **INTEGRITY DIRECTIONAL** | ) | |
| **SERVICES, LLC,** | ) | **Bankruptcy Case No. 19-11494-JDL** |
| | ) | **Chapter 7** |
| Debtor. | ) | |

## OPINION AND ORDER

Four creditors of debtor Integrity Directional Services, LLC ("Integrity"), collectively referred to as "Falcon,"[1] appeal the denial of their Motion for Amendment of Informal Proofs of Claim by the United States Bankruptcy Court for the Western District of Oklahoma.  The issue presented is whether the Bankruptcy Court erred in applying the informal proof of claim doctrine and, specifically, in determining that the doctrine does not salvage Falcon's untimely claims against the bankruptcy estate ("Estate").  Exercising jurisdiction under 28 U.S.C. § 1334(b), the Court reverses and remands for further proceedings.

### BACKGROUND

The underlying bankruptcy case was initiated on April 15, 2019, with the filing of an involuntary Chapter 7 petition against Integrity, a corporation based in Norman, Oklahoma.  *See* App'x Vol. V (Doc. No. 18) at 69; *In re Integrity Directional Servs., LLC*, No. 19-11494-JDL (Bankr. W.D. Okla.).  Integrity was, at that time, subject to a

_____

[1] The "Falcon" appellants are: (1) Falcon Strategic Partners IV, LP; (2) J&R Investment Group, LLC; (3) Manuel F. Gonzalez; and (4) the K. Rick Turner Revocable Trust.  *See* Appellants' Opening Br. (Doc. No. 12) at 8.

receivership intended to facilitate its dissolution and winding up and to oversee the distribution of its assets to creditors.  In the bankruptcy case, as in the state-court action in which the receivership originated, Falcon alleged that it was an undersecured creditor of Integrity.  *See id.*; *Maxim-IDS Invs., LLC v. Integrity Directional Servs., LLC*, No. CJ-2019-368 (Cleveland Cnty. Dist. Ct.).[2]

On April 29, 2019, Falcon and the Receiver for Integrity filed a motion with the Bankruptcy Court seeking, among other things, relief from the automatic stay imposed by 11 U.S.C. § 362 ("Stay Motion").  *See* App'x Vol. I (Doc. No. 13) at 68-105.  In the Stay Motion, Falcon and the Receiver asserted that: (1) in the opinion of the Receiver, "the current net liquidation value of [Integrity] is less than $20,000,000.00"; and (2) the claims of the secured creditors against Integrity exceed $30,000,000.00, plus any interest, fees, expenses, and other obligations and liabilities.  *Id.* at 72, 76.  The Stay Motion stated that as of March 31, 2019, just prior to the filing of Integrity's bankruptcy petition, Integrity owed Falcon "the sum of $24,711,811.00 plus late fees and costs of collection, including a reasonable attorneys' fee."  *Id.* at 75 (footnote omitted).  The Stay Motion details the promissory notes and security agreement underlying the debt.  *Id.* at 73-75.

Two days later, on May 1, 2019, Falcon and the Receiver changed course, filing an amendment to their Stay Motion ("Amendment").  *See id.* at 141-58.  Specifically, they then sought relief from the automatic stay *only* "to the extent necessary to permit the Receiver to complete [a] sale . . . of [Integrity's] personal property . . . and [to] use the cash

---

[2] Docket publicly available through http://www.oscn.net.

on hand to fund the sale." *Id.* at 141. The Amendment proposed that "[u]pon completion of the sale," the Receiver would "[turn over] proceeds to the Chapter 7 Trustee" for distribution in the bankruptcy proceeding. *Id.* at 141-42.

On May 23, 2019, Falcon and the Receiver filed notices withdrawing the Stay Motion altogether ("Withdrawal"). *See id.* at 159-62. The Withdrawal was predicated on an agreement between Falcon, the Receiver, and the trustee for the Estate ("Trustee"), under which the Trustee would employ the Receiver as a liquidating agent. *See id.* at 163-88. Falcon and the Receiver asked the Bankruptcy Court to terminate the automatic stay as to Integrity and its property and order the property abandoned by the Estate, allowing the Receiver to sell the property and pay the proceeds of the sale to Falcon and other secured creditors. *See id.* at 80-81. This agreement was described as beneficial to all affected parties because it allowed for liquidation of Integrity's property through the bankruptcy proceeding while also capitalizing on the "benefit and speed which would result from [the Receiver's] prior preparation to liquidate [Integrity's assets]" in the state-court action. Appellants' Opening Br. at 14-15.

Thus, the record reflects that Falcon's intent—at least as of the date of the Withdrawal—was to seek a recovery against the Estate through the bankruptcy case. Falcon actively participated in the bankruptcy proceeding, having filed various documents and having appeared at hearings since the bankruptcy's inception. *Id.* at 23; Appellee's Resp. Br. (Doc. No. 23) at 6-7, 16. Falcon's claim is identified as that of a secured creditor in Schedule D of the Trustee's Summary of Assets and Liabilities. *See* App'x Vol. II (Doc. No. 14) at 78. Further, the Trustee moved for approval of a sale of Integrity's assets. *See*

*id.* at 216-34.  When a response was filed objecting that Falcon should not be permitted to credit bid for those assets,[3] Falcon filed a document expressly waiving its right to do so. *See* App'x Vol. IV (Doc. No. 16) at 52-54.

On July 10, 2019, the Bankruptcy Court issued notice that creditors who wished to share in any distribution of funds from the Estate must file a proof of claim no later than October 8, 2019.  *See* App'x Vol. I at 23.  Despite its previous participation in the bankruptcy proceeding, Falcon neglected to file timely proofs of claim with the Bankruptcy Court.  Falcon's proofs of claim were not filed until October 10, 2019—two days past the October 8, 2019 deadline—due to "a miscommunication."  Appellants' Opening Br. at 20; *see* App'x Vol. III (Doc. No. 15) at 17-18.

Six days later, on October 16, 2019, Falcon filed a Motion for Amendment of Informal Proofs of Claim.  App'x Vol. IV at 15-241.  In this Motion, Falcon urged the Bankruptcy Court to treat its Stay Motion, together with related filings and other relevant circumstances, as informal proofs of claim, "to deem [those] informal proofs of claim amended by the filing of Falcon's formal proofs of claim" on October 10, 2019, and "to relate the time of filing back to April 29, 2019," when the Stay Motion was filed.  *Id.* at 15.

Following a hearing, the Bankruptcy Court denied the Motion for Amendment in a Memorandum and Order issued on January 17, 2020.  App'x Vol. V at 67-86.  Falcon then

---

[3] "Section 363(k) of the Bankruptcy Code authorizes secured creditors to purchase property through credit bids."  *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 n.2 (10th Cir. 2010) (citing 11 U.S.C. § 363(k)).  That statute provides that at a sale "of property that is subject to a lien that secures an allowed claim . . . the holder of such claim may bid . . . and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."  11 U.S.C. § 363(k).

timely initiated this appeal of that ruling pursuant to 28 U.S.C. § 158 and Rule 8005 of the Federal Rules of Bankruptcy Procedure.  On August 24, 2020, the parties appeared before this Court and presented oral argument on the merits of the appeal.  *See* Doc. No. 26.

DISCUSSION

I.       *The Informal Proof of Claim Doctrine*

To receive a distribution from the bankruptcy estate, a creditor must timely file a written proof of claim that "conform[s] substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a).  Where, as here, "notice of insufficient assets to pay a dividend was given to creditors," "and subsequently the trustee notifies the court that payment of a dividend appears possible," the bankruptcy court "shall give at least 90 days' notice by mail to creditors" of that possibility and of the deadline for filing proofs of claims.  *Id.* R. 3002(c)(5); *see also id.* R. 3002(c); *see also In re Wynn*, No. WO-02-010, 2002 WL 1270176, at *3-4 (B.A.P. 10th Cir. June 7, 2002).

The statutorily prescribed deadlines for filing proofs of claim are "in the nature of a statute of limitations," and their strict enforcement often generates harsh results.  *In re Wynn*, 285 B.R. 344 (B.A.P. 10th Cir. 2002) (citations and internal quotation marks omitted).  "[I]n an effort to ameliorate what is perceived as a harsh result of strict enforcement" of the claims deadline, courts have often "deemed something other than a proof of claim to be an 'informal proof of claim' which may be amended."  *In re*

*McCutchen*, 536 B.R. 930, 939 (Bankr. N.D. Okla. 2015) (internal quotation marks omitted); *see also In re Anchor Res. Corp.*, 139 B.R. 954, 956 (D. Colo. 1992).

> An informal claim is some document that was filed with the Court that is not, and was not intended to be, a proof of claim.  The doctrine permits a court to treat something other than an actual proof of claim as an 'informal' proof of claim that is timely filed, and thereafter, the creditor is allowed to file a 'formal' proof of claim that relates back to the date of the original filing.  The party seeking to assert an informal proof of claim bears the burden of proof.

*In re McCutchen*, 536 B.R. at 939 (internal quotation marks omitted).

"Most, if not all, of the bankruptcy courts in this circuit" "have adopted the five part test for an informal proof of claim" discussed by the Tenth Circuit Court of Appeals in *In re Reliance Equities, Inc.*, 966 F.2d 1338 (10th Cir. 1992).  *In re McCutchen*, 536 B.R. at 940.  Pursuant to this test, five factors are considered to determine whether to treat an earlier document as an informal proof of claim and allow amendment:

1. the proof of claim must be in writing;
2. the writing must contain a demand by the creditor on the debtor's estate;
3. the writing must express an intent to hold the debtor liable for the debt;
4. the proof of claim must be filed with the Bankruptcy Court; and
5. based on the facts of the case, it would be equitable to allow the amendment.

*In re Reliance Equities*, 966 F.2d at 1345 (internal quotation marks omitted).

The Court finds the test outlined in *Reliance* "to be well-reasoned and generally accepted" and "will therefore apply the test to the facts at bar."  *In re McCutchen*, 536 B.R. at 940-41; *see also In re Wynn*, 2002 WL 1270176, at *3-4.

## II.  Application of the Doctrine

Falcon first argues that the Bankruptcy Court erred in holding that Falcon's writings did not constitute an informal proof of claim because they did not satisfy the "demand" and

"intent" requirements of *Reliance*'s five-part test. *See* Appellant's Opening Br. at 23.  The Court reviews this legal determination de novo. *See In re Anchor Res. Corp.*, 139 B.R. at 955.

Falcon further argues that the Bankruptcy Court erred in holding that the equities did not favor treating Falcon's writings as an informal proof of claim. *See* Appellant's Opening Br. at 23.  The Court reviews this challenge under an abuse of discretion standard and will not disturb the decision unless the Court "ha[s] a definite and firm conviction" that the Bankruptcy Court erred. *In re Antonich*, No. WO-99-031, 1999 WL 1295498, at *2 (B.A.P. 10th Cir. Dec. 14, 1999) (internal quotation marks omitted); *accord In re McCutchen*, 536 B.R. at 941.

The Court considers each challenge in turn.

A. *Falcon's Filings, Considered Together, Contain a Demand by Falcon Against the Debtor's Estate and Express an Intent to Hold the Debtor Liable*

The Bankruptcy Court concluded that Falcon's Stay Motion did not satisfy the doctrine's "demand" and "intent" requirements and held that none of Falcon's other filings did so either, noting that these other filings failed to "stat[e] the amount or nature of the debt owed" to Falcon.  App'x Vol. V at 75-82.  Falcon argues that the Stay Motion "as amended and then withdrawn," along with its waiver of credit bid rights, satisfies the requirements for an informal proof of claim under the facts and circumstances presented. Appellants' Opening Br. at 23.

This Court, considering all relevant filings, respectfully disagrees with the Bankruptcy Court's conclusion.  Taken together, Falcon's writings reflect both "a demand

by the creditor on the debtor's estate" and "an intent to hold the debtor liable for the debt." *In re Reliance Equities*, 966 F.2d at 1345.

The Bankruptcy Court correctly observed that there is a split in authority as to whether motions for relief from the automatic stay, alone, may constitute informal proofs of claim.  *See* App'x Vol. V at 75-79; *see, e.g.*, *In re Roberts*, 367 B.R. 677, 682 (Bankr. D. Colo. 2007) ("Under the *Reliance Equities* standard, there may be circumstances where a motion for relief from stay could constitute an informal proof of claim, but those circumstances would be rare indeed.").[4]  Much persuasive authority supports, however, the proposition that in applying the doctrine, a motion for relief from the automatic stay may be considered with the creditor's other filings to collectively constitute an informal proof of claim.  *See, e.g.*, *In re Charter Co.*, 876 F.2d 861, 864 (11th Cir. 1989); *In re Ronecker*,

---

[4] Courts have found that a motion for relief from stay does not qualify as an informal proof of claim when, for example, creditors file a motion for relief from the automatic stay, obtain that relief, and pursue their claims outside the bankruptcy process before returning to the bankruptcy court to request a deficiency, arguing that their motion for relief from stay qualifies as an informal proof of claim.  In many such cases, courts have determined that the motion for relief from stay did not qualify as an informal proof of claim because the motion failed to make a demand on the estate or evidence an intent to hold the debtor liable on the claim.  *See In re Anchor Res. Corp.*, 139 B.R. at 957-58 ("Nowhere in [the creditor's] motion for relief from stay or in the stipulation did [the creditor] indicate that it intended to hold [the debtor] liable for any deficiency after the sale of the equipment or make a claim against the estate for the unsecured portion of the debt owed to it."); *In re Spresser*, No. 08-41067, 2012 WL 124855, at *4 (D. Kan. Jan. 17, 2012) (holding that the creditor's motion for relief from stay, which sought permission to foreclose on the property outside the bankruptcy proceedings to satisfy the debt, did not evidence the creditor's intent to hold the debtors liable on any remaining balance after selling the property and did not constitute an informal proof of claim).

204 B.R. 552, 554 (Bankr. E.D. Mo. 1997); *In re Mother Hubbard, Inc.*, 152 B.R. 189, 192-93 (Bankr. W.D. Mich. 1993).

Relevant here, the Eleventh and Ninth Circuits have found that a motion for relief from the automatic stay constituted an informal proof of claim when the stay motion and other filings together: (1) apprised the court of the existence and nature of the claim, and (2) made clear the claimant's intention to hold the debtor liable for the claim. *See In re Charter Co.*, 876 F.2d at 863; *In re Pizza of Haw.*, 761 F.2d 1374, 1382 (9th Cir. 1985).[5] In both cases, the appellate courts considered the claimants' request for relief from the automatic stay, together with the other documents filed, to determine if the filings sufficiently stated an explicit demand against the estate and evidenced an intent to hold the debtor liable. *See In re Pizza of Haw.*, 761 F.2d at 1382 (finding no abuse of discretion where the district court had determined that "the documents [the creditor] filed in the bankruptcy court," "together with its active participation in the bankruptcy case, constituted an amendable informal proof of claim"); *In re Charter Co.*, 876 F.2d at 864 (considering both the motion for relief from the automatic stay and a later stipulation);

---

[5] The Bankruptcy Court noted that the Ninth Circuit's standard regarding informal proofs of claim was "much more liberal" than the *Reliance* standard, emphasizing that the Ninth Circuit test does not require a document to be filed in the court to constitute an informal proof of claim. App'x Vol. V at 79 (citing *In re Holm*, 931 F.2d 620 (9th Cir. 1991)). While the Ninth and Eleventh Circuits' articulation of the elements of an informal proof of claim differs slightly from that in *Reliance*, these decisions are instructive as to the elements of the *Reliance* test at issue on appeal—the demand and intent elements.

*accord In re Allied Disc. Corp.*, No. 11-03-11697, 2008 WL 746993, at *3 (Bankr. D.N.M. Mar. 17, 2008).

Here, Falcon's Stay Motion—a written document filed with the Bankruptcy Court—identified the existence and amount of the debt claimed to be owed by Integrity to Falcon. *See* App'x Vol. I at 68-105; *id.* at 72-75 (stating amounts owed by Integrity to Falcon and that the debts were secured). In and of itself, the Stay Motion does not express an intent to recover the debt, or any portion thereof, through the bankruptcy proceeding. Falcon's subsequent filings, however, demonstrate such an intent. The Amendment proposed that all proceeds from the receiver's sale be transferred directly to the Trustee for administration by the Bankruptcy Court. *See id.* at 141-58. The Withdrawal went one step further by ensuring that the liquidation of assets in which Falcon claimed a security interest occurred entirely within the bankruptcy case. *See id.* at 159-62. Any lingering uncertainty regarding Falcon's intent to recover from the Estate was put to rest when, on July 12, 2019, Falcon expressly waived its right to credit bid, thus ensuring the transfer of actual cash proceeds to the Trustee. App'x Vol. IV at 52. Falcon's efforts, as evidenced by the referenced filings in the bankruptcy case, eliminated its recovery by any avenue other than the bankruptcy proceeding and showed its intent to pursue recovery on its claim from the Estate. These efforts were undisputedly understood by all parties involved to be an expression of Falcon's intent to seek a recovery through the bankruptcy proceeding. Indeed, the Trustee identified Falcon's claim in Schedule D as Secured Claim 2.1 in the amount of $56,227,297.00 supported by collateral estimated at $13,000,000.00. *See* App'x

Vol. II at 78. Falcon's claim was not scheduled as contingent, unliquidated, or disputed. *See id.*

In sum, Falcon's Stay Motion, Amendment, Withdrawal, and waiver of its right to credit bid collectively reflect that Falcon was pursuing recovery of a specific undersecured claim through the bankruptcy proceeding and that it had abandoned pursuit of other remedies available to a secured creditor. This is sufficient to satisfy the "demand" and "intent" requirements set forth in *Reliance*.

The Trustee argues that the doctrine's "intent" requirement is not satisfied absent an explicit statement of such intent in the pertinent filings. Appellee's Resp. Br. at 15. This argument is based on a construction of the phrase "express an intent," as articulated in the Reliance test, as synonymous with the term "express intent," which is commonly equated with the notion of the intent being explicitly stated. More persuasive, however, are the many decisions supporting the view that in ascertaining whether a filing expresses an intent to recover from the bankruptcy estate, the court may consider the surrounding facts and circumstances, including any knowledge of such intent of the relevant parties. *See*, *e.g.*, *In re Charter*, 876 F.2d at 864; *In re Pizza of Haw.*, 761 F.2d at 1376.

The Court further disagrees with the Bankruptcy Court's conclusion that Falcon's filings did not satisfy *Reliance*'s demand and intent elements because the filings lacked "language . . . evidencing an intent to seek to recover an unsecured deficiency claim" "in the event that its secured claim was disallowed or its collateral sold and applied against the debt." App'x Vol. V at 77. The test outlined in *Reliance* does not require that a creditor's writing state whether the subject debt is secured or unsecured. *See In re Reliance Equities*,

11

966 F.2d at 1345.  Even so, the Trustee here knew Falcon "intended to participate in the [E]state" as an unsecured creditor to some extent, as the Trustee's claim schedule reflects that Falcon's claim was undersecured.  *See* App'x Vol. II at 78.  Further, the Trustee testified in the Bankruptcy Court that he understood that if a preference action challenging the status of Falcon's debt to Integrity were successful, Falcon nevertheless would seek "to participate in the [E]state as . . . a large unsecured creditor."  App'x Vol. VI (Doc. No. 17) at 58-59.  In such circumstances, imposing a requirement of an express description of a debt as secured or unsecured elevates form over substance and is contrary to the equitable purpose of the informal proof of claim doctrine.  *See In re B & P Baird Holdings, Inc.*, 759 F. App'x 468, 482 (6th Cir. 2019) (rejecting trustee's "overly technical argument").  "The intent of the informal Proof of Claim concept is to alleviate problems with form over substance[.]"  *In re WPRV-TV, Inc.*, 102 B.R. 234, 238 (Bankr. E.D. Okla. 1989).  This doctrine "prevent[s] the potentially devast[at]ing effect of the failure of a creditor to formally comply with the requirements of the Code in the filing of a Proof of Claim, when, in fact, pleadings filed by the party asserting the claim during the claims filing period in a bankruptcy case put[] all parties on sufficient notice that a claim is asserted by a particular creditor."  *Id.*  Here, Falcon's writings gave sufficient notice of the claims it was asserting.[6]

Having conducted its de novo review, the Court concludes that when taken together Falcon's filings reflect both "a demand by the creditor on the debtor's estate" and

---

[6] The Court also disagrees with the conclusion of the Bankruptcy Court and the Trustee that Falcon's pleadings evidence a desire to have its debt paid through enforcement of its security interest in Integrity's property, and not from Integrity or the Estate.  *See* App'x Vol. V at 84-85.  While Falcon's Stay Motion initially suggested that Falcon intended to

"an intent to hold the debtor liable for the debt." *In re Reliance Equities*, 966 F.2d at 1345. Accordingly, Falcon has shown that these filings may properly be deemed an "informal proof of claim" that "may be amended." *In re McCutchen*, 536 B.R. at 939 (internal quotation marks omitted).

### B.    The Equities Favor Application of the Doctrine

In its Memorandum and Order denying Falcon's Motion for Amendment, the Bankruptcy Court acknowledged that "were this issue to be decided on the equities alone Falcon would perhaps have a stronger case seeking a determination that it had filed an informal proof of claim," but it also observed that "the fact that the doctrine is equitable does not mean that equitable considerations standing alone can establish an informal proof of claim." App'x Vol. V at 83.  Having concluded that Falcon's filings did not constitute an informal proof of claim, the Bankruptcy Court nevertheless proceeded with the equities analysis of *Reliance* and determined that the equities did not favor allowance of an informal proof of claim because Falcon: (1) was a sophisticated and counseled creditor, (2) had notice of the claims bar date, and (3) was "intimately involved" in the bankruptcy case.

---

enforce its security interest in Integrity's property outside of the bankruptcy proceeding, Falcon's Withdrawal agreed that the liquidation of assets in which Falcon claimed a security interest would occur entirely within the bankruptcy case. *See* App'x Vol. I at 159-62.  Falcon then waived its right to credit bid in order to offset any secured claim that it may have had, ensuring that the cash proceeds of the bankruptcy sale would go into the Estate for distribution by the Trustee.  App'x Vol. IV at 52-54.  These filings eliminated Falcon's opportunity for recovery by any avenue other than the bankruptcy proceeding.

*See id.* at 84-85 (citing *In re Egan*, 526 B.R. 111, 114 (Bankr. S.D.N.Y. 2015)).  The Court respectfully disagrees with this determination.

It is certainly correct that Falcon was represented by experienced counsel, knew of the claims bar date, and articulated no compelling reason for missing the deadline.  This is not a trivial issue—the administration of a bankruptcy proceeding depends upon an orderly application of the rules, so that procedural steps play out in a timely, organized way.

That said, the scheduling disruption that would be caused by a two-day lapse in filing is greatly outweighed in this instance by the alternative result of a plainly unjust distribution of Estate proceeds.  Falcon undisputedly is the largest creditor of the Estate and is owed millions of dollars.  Accordingly, disallowing Falcon's claims, if valid, would likely result in a substantial "windfall" for the remaining creditors at Falcon's expense.  *In re Petrucci*, 256 B.R. 704, 707 (Bankr. D.N.J. 2001); *accord In re Cavalier Indus., Inc.*, No. 99-31737, 2003 WL 716291, at *4 (Bankr. E.D. Pa. Feb. 6, 2003); *In re Montgomery*, 305 B.R. 721, 726 (Bankr. W.D. Mo. 2004).  This consideration weighs in favor of the doctrine's application.

Although Falcon failed to observe a critical filing deadline, this was an isolated incident that stands in contrast to Falcon's otherwise consistent assertion of its rights and pursuit of relief through the bankruptcy process.  Falcon's active involvement in the bankruptcy case weighs in favor of the doctrine's application.  *See In re Allied Disc. Corp.*, 2008 WL 746993, at *2 (creditor's "vigorous[] participat[ion]" in the bankruptcy case weighed in favor of applying the doctrine since its purpose is to salvage claims by creditors

who manifested "inten[t] to hold the debtor liable for the claim" through bankruptcy); *accord In re Michels*, 286 B.R. 684, 692-93 (B.A.P. 8th Cir. 2002).

Relatedly, the fact that the Trustee and all other affected parties were aware of Falcon's intent to pursue its claims through the bankruptcy proceeding weighs in favor of application of the doctrine. *See In re Allied Disc. Corp.*, 2008 WL 746993, at *3 (finding that it would be equitable to allow amendment of the proofs of claim where the debtor knew of a claim "from the beginning of the case"); *see also In re Michels*, 286 B.R. at 693 ("[F]rom the moment the case was filed, or soon thereafter, every party participating in this case knew the amount, extent, and nature of the [creditor's] claim and of [the creditor's] intention to vigorously pursue its position as a secured creditor.").[7]

Finally, there would be no undue prejudice to any party if amendment were allowed, which is a relevant factor in the equities analysis. *See In re Shore*, No. 03-43072, 2004 WL 2358067, at *2 (Bankr. D. Kan. May 14, 2004); *In re Scott*, 67 B.R. 1011, 1013 (Bankr. M.D. Fla. 1986). "In determining whether opposing parties are prejudiced by amendment of an informal proof of claim, bankruptcy courts examine 'such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position.'" *In re Simplot*, No. 10-00239, 2014 WL 2112937, at *6 (Bankr. D. Idaho May 20, 2014) (quoting *In re JSJF Corp.*, 344 B.R. 94, 102 (B.A.P. 9th Cir. 2006)). Here, no party has argued that allowing

---

[7] The Bankruptcy Court noted this awareness but found that "the Trustee's actual knowledge of [Falcon's] claim[s] standing alone is insufficient for the filing of an informal proof of claim." App'x Vol. V at 85. As discussed, the reasons for application of the doctrine extend beyond the Trustee's knowledge of Falcon's claims.

Falcon to file an amended proof of claim would result in prejudice to anyone involved in the bankruptcy proceeding.  There was no undue delay: Falcon missed the claims bar date by only two days.  The record does not reflect that, during the two-day lapse, Integrity or other creditors detrimentally relied on Falcon's failure to timely file its informal proof of claim.  *Cf. In re Petrucci*, 256 B.R. at 797 (noting the absence of any "evidence of detrimental reliance by other creditors on receipt of a particular percentage").  And, as noted by the Bankruptcy Court, there is no evidence that Falcon engaged in any "misconduct" that might "disqualify[] it from equitable relief."  App'x Vol. V at 83.

The analysis detailed above leaves this Court with a "definite and firm conviction that the bankruptcy court made a mistake."  *In re Antonich*, 1999 WL 1295498, at *2 (internal quotation marks omitted).[8]  In this instance, the equities support amendment of Falcon's informal proofs of claim.  *See In re Reliance Equities*, 866 F.2d at 1345.

## CONCLUSION

For the reasons set forth above, the January 17, 2020 Memorandum and Order denying the Motion for Amendment of Informal Proofs of Claims is REVERSED.  This

---

[8] While this Court has disagreed with the Bankruptcy Court's conclusion, it notes its appreciation of that court's principled application of the law as it saw it to the facts of the case.

case is REMANDED to the United States Bankruptcy Court for the Western District of

Oklahoma for further proceedings consistent with this opinion.

IT IS SO ORDERED this 11th day of August, 2023.

CHARLES B. GOODWIN
United States District Judge